IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY GREEN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-00264 |
| WACKENHUT SECURITY INC., a/k/a G4S SECURE SOLUTIONS (USA), INC., | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Larry Green ("Plaintiff" or "Green") has brought this action against his former employer Defendant Wackenhut Security, Inc. d/b/a G4S Government Solutions, Inc. ("Defendant" or "G4S")[1] alleging race discrimination in violation of 42 U.S.C. § 1981. Specifically, Plaintiff alleges that his supervisor, motivated by racial animus, tampered with the saliva sample Plaintiff submitted during a random drug test resulting in a positive drug test. This positive drug test was not only the basis for Plaintiff's immediate termination from employment but also resulted in his disqualification by the United States Army from employment at Fort Meade, Maryland where Defendant provided security pursuant to a contract with the Government. After a period of discovery, Defendant G4S filed a Motion for Summary Judgment (ECF No. 12) pursuant to Rule 56 of the Federal Rules of Civil

---

[1] In its disclosure statement pursuant to this Court's Local Rule 103.3, Defendant G4S Government Solutions, Inc. ("Defendant" or "G4S") indicates that it was formerly known as Wackenhut Services, Inc. and that one of its affiliates is Wackenhut Services, LLC. Rule 103.3 Disclosures at 1, ECF No. 5. Additionally, Defendant's Answer states that Plaintiff incorrectly identified it as "Wackenhut Security, Inc., a/k/a, G4S Secure Solutions (USA), Inc." in his Complaint. Answer at 1, ECF No. 6.

1

Procedure. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Wackenhut Security, Inc. d/b/a G4S Government Solutions, Inc.'s Motion for Summary Judgment (ECF No. 12) is GRANTED.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Plaintiff Larry Green ("Plaintiff" or "Green") is an African-American male who was employed by Defendant Wackenhut Security, Inc. d/b/a G4S Government Solutions, Inc. ("Defendant" or "G4S")[2] as an armed security officer at Fort Meade, Maryland from October 9, 2007 until his termination on January 27, 2009. Employment Offer Confirmation Letter, ECF No. 12-3; Pl.'s Compl. ¶¶ 5, 13, ECF No. 1; L. Green Aff. ¶ 8, ECF No. 13-1; W. Beach[3] Aff. ¶¶ 3, 12, ECF No. 12-2. Defendant G4S "provides security at the United States Army installation at Fort Meade pursuant to a contract with the United States government." Mem. in Supp. of Def.'s Mot. for Summ. J. at 2, ECF No. 12-1.

While working for G4S, Green received one favorable work evaluation on February 5, 2008. Board Evaluation, ECF No. 13-4. Additionally, Howard Haynes, in his capacity as Wackenhut Security Shift Manager, wrote a letter of recommendation on Green's behalf for the position of Alternate Lieutenant. Letter of Recommendation, ECF No. 13-5. However,

---

[2] *See supra* note 1.
[3] William Beach was Defendant's Chief of Guards and therefore Green's supervisor at Fort Meade at the time relevant to the Complaint. W. Beach Aff. ¶ 2.

Green also received seventeen disciplinary write-ups as a result of his recurring lateness, absenteeism and failure to follow company policies. W. Beach Aff. ¶ 5. Specifically, the record reflects that between November 29, 2007 and December 8, 2008, Green received seven (7) employee counselings, seven (7) verbal employee counselings, two (2) suspensions and one (1) letter of reprimand. Emp. Counselings, ECF Nos. 12-14 to 12-19, 12-22 to 12-24, 12-26 to 12-30; Suspension Notices, ECF Nos. 12-20, 12-21; Letter of Reprimand, ECF Nos. 12-25. The letter of reprimand issued on July 12, 2008 stated that Green was "failing to meet established standards of performance . . . [and that] future acts of absence, lateness, unprofessional conduct and/or violations of established policies may result in additional disciplinary action, up to and including termination for cause." Letter of Reprimand, ECF No. 12-25. Additionally, Green received five (5) of the seven (7) employee counselings from September 2008 to December 2008 after being issued the letter of reprimand. Emp. Counselings, ECF Nos. 12-26 to 12-30.

Upon accepting the position, Green signed a urinalysis/blood test release form by which he agreed to submit to random drug testing and acknowledged "that a positive test, indicative of the illegal use of drugs, will result in [his] being denied employment, or the termination of [his] current employment." Urinalysis/Blood Test Release, ECF No. 12-4. At the time, Plaintiff was also made aware of and signed Defendant's Drug-Free Workplace policy which stipulates that "any unlawful use . . . or possession of controlled substances, drugs . . . is absolutely prohibited while on duty, or on Company property, and is an offense subject to termination of employment." Drug-Free Workplace Certification, ECF No. 12-5.

On January 15, 2009, consistent with the random drug test policy, William Beach ("Beach"), Defendant's Chief of Guards and Green's supervisor, received a notice from Total Compliance Network ("TCN"), Defendant's independent contractor responsible for the administration of the drug tests, advising him that nine employees, including Plaintiff Green, were required to undergo a drug test. TCN Names for Drug Test, ECF No. 12-6. As Green was scheduled for testing on January 20, 2009, Beach "personally obtained a saliva sample from Larry Green" on that day. W. Beach Aff. ¶ 8. According to Beach, he followed the proper procedure for the collection of Green's saliva sample. *Id.* ¶ 11. Specifically, Green was asked to open the testing kit in Beach's presence, hold the testing swab in his mouth for three minutes, remove it, then place it in a liquid tube, and put the cap on the tube. *Id.* ¶ 8. Green then placed the tube in a plastic bag and secured it with tape. *Id.* Thereafter, Green signed a testing form certifying that the specimen container was "sealed with a tamper evident seal in [his] presence and the information provided on this form and the label affixed to each specimen container is correct." *Id.* ¶ 9. Once the sample was collected, Beach placed it in a FedEx envelope and mailed the testing kit to TCN's testing facility. *Id.* ¶ 10.

On January 27, 2009, Defendant G4S received notice from TCN that Green's sample had tested positive for cannabinoids/THC. Medical Review Officer Determination, ECF No. 12-8. As a result, Defendant immediately terminated Green's employment. Notice of Termination, ECF No. 12-9. Additionally, that same day, the United States Army disqualified Green for employment at Fort Meade as it determined that Green was in violation of the Individual Reliability Program. Dep't of the Army Memo, ECF No. 12-13.

4

The United States Army considered participation in that program as a condition of employment. *Id.*

After his termination, Green filed a grievance with respect to his termination under the terms of the agreement between Defendant and his Union. Grievance, ECF No. 12-10. Green's grievance was rejected under Steps 1, 2 and 3 of the grievance process. Grievance, ECF No. 12-10; Grievance Resps. ECF Nos. 12-11, 12-12. Plaintiff then filed the instant action, on January 27, 2012, alleging that Beach had tampered with his drug test sample to cause his termination as a further act of racial discrimination against him. Pl.'s Compl. ¶ 11, ECF No. 1. Specifically, Plaintiff claims that on two prior occasions, Beach had treated him differently than others on account of his race. First, Plaintiff alleges that in July 2008, despite having already fulfilled this yearly shooting range requirement, Beach required Green to repeat this requirement or face termination. Pl.'s Compl. ¶ 9. Second, Plaintiff also claims that in August 2008, Beach denied his leave request to care for his wife but permitted other Caucasian employees to take leave. *Id.* ¶ 10. Additionally, Plaintiff claims that from 1989, when he served in the United States Army, to 2007, when he began working for Defendant, he never failed a drug test. L. Green Aff. ¶¶ 2-7. Moreover, Plaintiff states that while working for Defendant he passed both his August 2008 and November 2008 drug tests. *Id.* ¶¶ 14-15.

With respect to the January 20, 2009 drug test, however, Green claims Beach did not follow the regular protocol. *Id.* ¶ 16. According to Green, Beach made him sign the drug testing form attesting to the proper collection of the specimen prior to collecting his saliva

5

sample. *Id.* Green then claims that instead of placing the swab in a tube and sealing the tube himself, Beach took the unsealed sample from him and then put the unsealed sample in an unsealed bag. *Id.* As such, Green claims that he "strongly believe[s Beach] had a swab laced with marijuana on it from outside the facility, and that [Beach] replaced [Green's] swab with the tainted swab once [Green] left [Beach's] office and then sealed [the sample] himself." *Id.* In sum, Green contends that Beach tampered with his drug test sample for the sole purpose of getting him terminated on account of Beach's racial animus toward Green. Pl.'s Compl. ¶ 11. Finally, Green claims that although he asked for another test, Beach did not approve his request. L. Green Aff. ¶ 17.

With respect to the tampering allegations, the record reflects that there was no indication of tampering with Green's sample. Step 3 Grievance Resp., ECF No. 12-12. The record further reflects that it is TCN's procedure to inspect the specimen for tampering prior to testing and that where a sample displays evidence of tampering prior to inspection, the lab does not proceed with inspection and requests an additional sample. *Id.* On a related note, Beach stated that upon first advising Green of his positive drug test, "Green claimed that he had been in a car with others who had smoked marijuana and that he must have inhaled some of that second hand smoke." W. Beach Aff. ¶ 14. It is only subsequently, according to Beach, that Green changed his story and claimed that Beach had tampered with the sample. *Id.* Nevertheless, in his affidavit, Beach declared that he had not tampered with the sample and that he had followed the proper protocol and procedure in collecting the January 20, 2009 sample from Green. *Id.* ¶ 11.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of

7

inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Following a period of discovery, Defendant Wackenhut Security, Inc. d/b/a G4S Government Solutions, Inc. ("G4S") filed the presently pending Motion for Summary Judgment. Defendant contends that summary judgment should be granted in its favor because Plaintiff Larry Green ("Plaintiff" or "Green") has failed to state a *prima facie* case of race discrimination. Alternatively, Defendant contends that even if Green had stated a *prima facie* case, his positive drug test provides a legitimate, non-discriminatory basis for termination. Finally, Defendant argues that Green has not produced any evidence to suggest that the reason for his termination was pretextual.

"Section 1981 grants all persons within the jurisdiction of the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Where the record contains no direct evidence of race discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Hawkins v. Pepsico, Inc.,* 203 F.3d 274, 281 (4th Cir. 2000); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("[T]he elements required to establish a *prima facie* case are the same under Title VII and Section 1981."). Under this framework, the plaintiff must first present enough evidence to prove a *prima facie* case of disparate treatment. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000). Second, once he establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment action was

8

taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Third, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Burdine*, 450 U.S. at 253) (internal quotation mark omitted).

A plaintiff establishes a *prima facie* case of disparate treatment under 42 U.S.C. § 1981 by showing that (1) he is a member of a protected class; (2) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment." *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Defendant G4S does not dispute that Green has established that he is a member of a protected class and that he suffered an adverse employment action. The record does not contain evidence of employees outside of his protected class receiving more favorable treatment. Although Green has alleged that his supervisor, William Beach ("Beach"), treated him differently than other Caucasian security officers, he has not provided any proof to support this allegation.

Additionally, Green has failed to prove that his performance, at the time of his termination, met Defendant's legitimate expectations. The record reflects that Green failed his January 20, 2009 drug test. In fact, the testing company determined that his saliva sample contained Cannabinoids/THC. Upon accepting the security officer position with Defendant, Green understood that "a positive test, indicative of the illegal use of drugs,

[would] result in" the termination of his employment. Urinalysis/Blood Test Release, ECF No. 12-4. Moreover, Green was also made aware of and signed Defendant's Drug-Free Workplace policy which stipulates that "any unlawful use . . . or possession of controlled substances, drugs . . . is absolutely prohibited while on duty, or on Company property, and is an offense subject to termination of employment." Drug-Free Workplace Certification, ECF No. 12-5. Accordingly, Green knew that the failure to pass a drug test was a condition for termination of employment, indicative of an employee's failure to meet Defendant's legitimate performance expectations. As Green failed his January 20, 2009 drug test, he was not performing his job duties at a level that met his employer's legitimate expectations at the time of his termination. Therefore, Green has failed to establish a *prima facie* case of disparate treatment under 42 U.S.C. § 1981.

Even if Green had established a *prima facie* case of disparate treatment, Defendant G4S has provided a legitimate non-discriminatory reason for his termination, namely his failure to pass the January 20, 2009 random drug test. As mentioned above, once a defendant has provided a legitimate non-discriminatory reason, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 142-43 (citation omitted) (internal quotation mark omitted).

In this case, despite being afforded a period of discovery, Green has not proven by a preponderance of evidence that Defendant's reason was a pretext, but instead claims that he was set up for termination by Beach who allegedly tampered with his saliva sample.

According to Green, Beach did not follow the protocol while collecting his saliva sample and did not allow Green to seal the tube containing the specimen. Green further claims that Beach must have laced his specimen before submitting it for testing. In support of this allegation, Green claims that from 1998 to January 2009, his employers routinely subjected him to random drug tests which he always passed until the January 20, 2009 test administered by Beach.

First, the Court notes that the parties have submitted conflicting affidavits and sworn pleadings in this case. The United States Court of Appeals for the Fourth Circuit has held that in such cases, summary judgment is generally precluded. *See Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir.1995). However, this Court need not rely on a party's factual allegations if they are contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Second, the record reflects that it is the drug testing company's policy to check for specimen tampering prior to testing and to forego testing where there is tampering. Moreover, the grievance process, Green was able to engage in based on an agreement between Defendant and Green's Union, led to the conclusion that there was no sample tampering in this case. The Fourth Circuit has held that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Ash v. United Parcel Service*, 800 F.2d 409, 411-12 (4th Cir. 1986); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)). Furthermore, "[m]erely denying the veracity of the employer's stated reason does not relieve plaintiff of her burden of proof. '[A] plaintiff's own assertions of discrimination in and of themselves

11

are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" *Bray v. Tenax Corp.*, 905 F. Supp. 324, 329 (E.D.N.C. 1995) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)). Therefore, Green has not provided any evidence to support his allegations.

Even if his allegations created a factual issue, Green's seventeen disciplinary write-ups as a result of his recurring lateness, absenteeism and failure to follow company policies between November 29, 2007 and December 8, 2008 provide strong evidence that his January 27, 2009 termination based on a failed drug test was not pretextual. In fact, the record reflects that during the year and three months he was employed by Defendant, Green was issued seven (7) employee counselings, seven (7) verbal employee counselings, two (2) suspensions and one (1) letter of reprimand. He was suspended for one day per suspension in March of 2008. The letter of reprimand dated July 12, 2008 was meant to "formally advise [Green] that [he was] failing to meet established standards of performance." Letter of Reprimand, ECF No. 12-25. The letter further stated that "future acts of absence, lateness, unprofessional conduct and/or violations of established policies may result in additional disciplinary action, up to and including termination for cause." *Id.* Additionally, Green received five (5) of the seven (7) employee counselings from September 2008 to December 2008 after receiving the letter of reprimand. Emp. Counselings, ECF Nos. 12-26 to 12-30. These seventeen performance related write-ups indicate that Defendant had ample reasons to terminate Green's employment prior to his January 20, 2009 drug test, but did not. As a result, Green has failed to prove by a preponderance of evidence that Defendant G4S's

reason for termination was a pretext for discrimination. Because no genuine issues of material fact exist, Defendant G4S is entitled to summary judgment. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant Wackenhut Security, Inc. d/b/a G4S Government Solutions, Inc.'s Motion for Summary Judgment (ECF No. 12) is GRANTED.

A separate Order follows.

Dated:	August 19, 2013	/s/_____
	Richard D. Bennett
	United States District Judge